United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Joel Beinin, Ph.D., | NO. C 06-02298 JW |
| Plaintiff, | **ORDER OVERRULING DEFENDANT CENTER FOR THE STUDY OF POPULAR CULTURE'S OBJECTIONS TO MARCH 16, 2007 ORDER DENYING MOTIONS TO COMPEL** |
| v. | |
| The Center for the Study of Popular Culture, | |
| Defendant. | |

## I. INTRODUCTION

On March 16, 2007, Magistrate Judge Seeborg issued an Order Denying Motions to Compel. (hereafter, "Order," Docket Item No. 93.) On March 30, 2007, Defendant filed its objections to the Order. (hereafter, "Objections," Docket Item No. 95.) The Court conducted a hearing on June 11, 2007. Based on the papers submitted to date and the oral arguments of counsel, the Court OVERRULES Defendant's Objections.

## II. BACKGROUND

The Magistrate Judge's Order referenced the following:

Plaintiff is a professor of Middle Eastern studies at Stanford University. Defendant is a non-profit organization which promotes conservative positions on matters of domestic and foreign policy. Defendant publishes political commentary online and in printed books and pamphlets. In February 2005, Defendant published a pamphlet entitled, "Campus Support for Terrorism," which criticized the views of various academic organizations and individuals. One of the pamphlet's articles, "Terror's Faculty Sympathizers," expressly criticized Plaintiff. The pamphlet cover had

1  photographs of four individuals named in the articles, including Plaintiff. Defendant obtained
2  Plaintiff's photograph from the Stanford University website. Plaintiff subsequently obtained an
3  assignment of rights from the photographer who had taken the picture, Theodore Mock ("Mock"),
4  and then filed this action for copyright infringement. (See Order Granting in Part and Denying in
5  Part Motion to Compel and Motion for Protective Order at 1-2, Docket Item No. 36.)

6  Since 1969, Mock has been the sole proprietor of Mock Photography, a Palo Alto business
7  that provides photography services. He has two part-time employees who assist him on an as-
8  needed basis. On March 4, 1997, Plaintiff had a photography session with Mock to have his
9  photograph taken for his upcoming book on Egyptian Jewry. Following the session, Plaintiff chose
10 the photograph at issue in this litigation and paid for the sitting fee and two copies of the
11 photograph. Plaintiff and Mock did not communicate again until mid-2005. At that time, Plaintiff
12 contacted Mock about the use of the photograph in Defendant's pamphlet. Mock had not seen the
13 pamphlet nor granted Defendant permission to use the photograph. Mock agreed to assign his
14 copyright in the work to Plaintiff. (Order at 2.)

15 Mock provided the following information about his business: for each customer's order,
16 Mock prepares a file including the customer's name, contact information, and date on which the
17 photograph was taken. The file is numbered to correspond with the customer's name in Mock's
18 Rolodex. The file includes negatives, invoices, sales receipts, and other notes on the customer. If a
19 customer requests a copyright assignment, documents relating to the assignment are placed in the
20 customer's file.[1] Approximately 2,500 unique customer files exist from over the last ten years.
21 Mock keeps the files from 1989 to 2003 in an offsite storage facility. The more recent files are
22 located at Mock's Palo Alto studio. (Order at 2-3.)

23 Presently before the Court are Defendant's Objections to March 16, 2007 Order Denying
24 Motions to Compel.

---

[1] Mock admits that some of this documentation may have been lost.

2

## III. DISCUSSION

A district court may modify a magistrate judge's ruling on a non-dispositive matter, such as an order to compel discovery, if the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Bahn v. NME Hospitals, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991). Pursuant to Civil Local Rule 72-2, the court may not grant a motion objecting to a Magistrate Judge's order without first giving the opposing party an opportunity to brief the matter. See Civ. L.R. 72-2. In this case, Plaintiff has submitted a Response to Defendant's Objection.

### A. Motion to Compel Against Plaintiff

At issue are Defendant's Document Item Request Nos. 15 and 17. Request No. 15 seeks documents, including emails, that refer or relate to Defendant, its principal (David Horowitz), or other representatives. Request No. 17 seeks any statements of fact or opinion concerning any of the issues in this action. In response to Request No. 15, Plaintiff produced copies of numerous emails that he has sent or has received concerning any of the issues in this action. The emails include those from people expressing support for Plaintiff with respect to his dispute with Defendant, including this action. (Order at 4.) In response to Request No. 17, Plaintiff has denied that any non-privileged responsive documents exist.[2] Id. The discovery dispute arose for two reasons: (1) Plaintiff redacted the names and email addresses of many of his email correspondents and (2) Plaintiff withheld some emails entirely on the grounds of attorney-client privilege and work-product protection.[3] Id.

Judge Seeborg found that the names and email addresses of Plaintiff's email correspondents were not discoverable because their identities were protected under the qualified privilege of associational privacy as described in NAACP v. Alabama, 357 U.S. 449 (1958):

---

[2] Judge Seeborg stated, "Given that the emails produced in response to No. 15 would appear also to be responsive to this request, Beinin seems to have meant that no *additional* non-privileged documents exist beyond those responsive to other requests." (Order at 4.)

[3] The emails withheld on the grounds of work-product privilege were email communications with Mr. Chris Toensing, Executive Director of the Middle East Research and Information Project in Washington, D.C. (Objections at 4.)

3

> [T]he communications in dispute are between and among people who share political views and goals, including specifically a desire to support Beinin in his disputes with the Center (including, but not limited to this action). Indeed, some of the emails suggest making efforts to create a "defense fund" or otherwise organize in support of Beinin's efforts. As such, the interests that underlie the associational privilege are fully implicated notwithstanding the fact that there is no formal organization *per se*.

(Order at 6.) Judge Seeborg further found that Defendant did not demonstrate a compelling need for the identities of Plaintiff's supporters:

> Even assuming Benin's (sic) "motivations" in bringing this suit are relevant to the Center's affirmative defenses, any further information on that subject that conceivably could be gathered through disclosure of the supporters' identities would be cumulative, at best. Beinin has made no secret of his feelings and views. Whether or not Beinin's conduct constitutes copyright misuse or unclean hands remains to be decided but additional evidence on the point would be superfluous.

Id. Lastly, Judge Seeborg found that Plaintiff properly withheld a series of pre-lawsuit email communications with third parties: "Beinin has made a sufficient showing that these emails were part of a fact-gathering process undertaken at the direction of counsel in preparation for litigation." (Order at 7.)

**1.    First Amendment Associational Privilege**

Defendant contends (1) that the First Amendment associational discovery privilege does not apply to informal communications after a lawsuit has been filed and outside of the organizational context; (2) even if it did apply, Plaintiff has failed to make the requisite showing of harm; and (3) even if Plaintiff could demonstrate harm, Defendant could overcome that showing based on a showing of compelling need. (Objections at 9-16.) Plaintiff contends that releasing the names of his supporters would have a chilling effect on their speech by exposing them to reprisal and harassment, and further contends that the sought discovery is irrelevant to Defendant's copyright misuse and unclean hands defenses. (Plaintiff's Opposition to Defendant's Objection to March 16, 2007 Order Denying Defendant's Motions to Compel at 6-15, hereafter, "Opposition," Docket Item No. 113.)

In NAACP v. Alabama ex rel. Patterson, the Supreme Court found:

> Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has

4

> more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly. It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.

357 U.S. 449, 460 (1958). Support of litigation is a form of expression and association protected by the First Amendment. NAACP v. Button, 371 U.S. 415, 428-29 (1963). Compelled disclosure of the names of individuals or groups supporting a plaintiff's lawsuit thus creates a risk of interference with First Amendment-protected interests in two ways. First, compelled disclosure might make the plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups, so that evidence of their support cannot be used against the plaintiff at trial. Second, the supporters themselves may desire anonymity, and may withhold support if they fear their names will be disclosed. Eilers v. Palmer, 575 F. Supp. 1259, 1260 (D. Minn. 1984).

The First Amendment associational privilege is not absolute; the court must consider the respective interests of the parties. Int'l Soc'y for Krishna Consciousness v. Lee, No. 75 Civ. 5388, 1985 WL 315 at *7 (S.D.N.Y. Feb. 28, 1985). However, the First Amendment privacy interest is overridden only when the party seeking the information asserts a compelling interest. Id. (citing Buckley v. Valeo, 424 U.S. 1, 64-65 (1976); NAACP v. Alabama, 357 U.S. at 463.) A "compelling interest" is one that "is crucial to the party's case," goes to the "heart of the claims," or is "directly relevant to the [party's] claim." Id. (internal citations omitted). This is because the First Amendment occupies a "preferred position . . . in the pantheon of freedoms," and its interests are not easily overridden. Id. (citing Baker v. F. & F. Investment, 470 F.2d 778, 782-83 (2nd Cir. 1972)).

In this case, the Court finds, for the reasons provided by Eilers, that the First Amendment associational privilege applies to the names of Plaintiff's email correspondents. In Eilers, the defendants sought discovery of the names of individuals or groups *financially* supporting the plaintiff's lawsuit. Id. However, the Court finds that the same First Amendment interests are

5

implicated—though perhaps to a lesser degree—when the identity of those who have privately offered verbal support for litigation is sought in discovery. One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance. Had Plaintiff's email correspondents realized that privately supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking.[4]

Further, Judge Seeborg's conclusion that Defendant has not demonstrated a compelling interest sufficient to override the First Amendment associational privilege is neither clearly erroneous nor contrary to law. As Judge Seeborg found, Plaintiff's own "feelings and views" concerning this lawsuit have been well-documented. Moreover, Plaintiff has already produced the contents of his emails to and from his correspondents; if Plaintiff made any statements via email that are potentially germane to Defendant's copyright misuse or unclean hands defense, Defendant is already in possession of those statements. It is extremely unlikely that Defendant will discover further, non-cumulative information through disclosure of Plaintiff's supporters' identities.

The Court overrules Defendant's Objection to Judge Seeborg's Order with respect to the names and contact information for Plaintiff's email correspondents.

**2.     Work Product Doctrine**

Defendant contends that Judge Seeborg erred in finding that the work-product privilege applied, because Plaintiff's opposition to the motion to compel did not present any sworn testimony concerning the people actually involved in the communications at issue. (Objections at 18.) Defendant further contends that it has a substantial need for the materials to support its copyright misuse and unclean hands defenses, because it believes that "the emails are likely to contain important information about plaintiff's motives and true goals in bringing this suit." Id.

---

[4] Judge Seeborg also considered that "some of the emails suggest making efforts to create a 'defense fund' or otherwise organize in support of Beinin's efforts." (Order at 6.) Thus, even though Plaintiff did not form a formal organization in opposition to Defendant, the emails substantially satisfy any organizational requirement inherent to the privilege; specifically, they demonstrate that the correspondents and Beinin share a common stance.

6

1    To obtain discovery of materials prepared in anticipation of litigation by an adversary
2 (whether the opposing party or that party's attorney), a party must show (1) substantial need of the
3 materials for the preparation of its case and (2) inability to obtain the substantial equivalent of the
4 materials without undue hardship.  Fed. R. Civ. P. 26(b)(3).  Even once the showing has been made,
5 the court must protect against disclosure of the "mental impressions, conclusions, opinions, or legal
6 theories of an attorney or other representative of a party concerning the litigation."  Id.

7    Plaintiff submitted declaration evidence indicating that each of the withheld emails contained
8 the legal strategies and opinions of Plaintiff's counsel, Michael Zimmerman.  The emails involve the
9 collection of facts in preparation for filing suit.  Specifically, at the direction of counsel, Plaintiff
10 communicated with Chris Toensing of the Peninsula Peace and Justice Center to verify some of the
11 facts underlying the lawsuit.  (Declaration of Mary E. Milionis in Support of Plaintiff's Opposition
12 to Defendant's Motion to Compel Plaintiff's Production of Documents ¶ 5, Docket Item No. 65.)

13    Since Plaintiff's emails were sent at his counsel's direction, they are likely to reveal
14 emphasis on particular facts that would indicate counsel's strategy in the case.  As such, Judge
15 Seeborg's finding that the documents fall within the scope of the work-product doctrine's protection
16 was not clearly erroneous.  Defendant has not demonstrated any inability to obtain the substantial
17 equivalent of the materials sought; for instance, it could take the third-party depositions of
18 individuals who communicated with Plaintiff regarding his case, including Chris Toensing.

19    The Court overrules Defendant's Objection to Judge Seeborg's Order with respect to the
20 emails withheld pursuant to the work-product doctrine.

### B. Motion to Compel Against Mock

22    At issue are Defendant's Document Request Nos. 7 and 8.  Request No. 7 sought all
23 documents from Mock concerning his "granting of any rights, including but not limited to the
24 granting of an assignment of a license, to any PERSON for the USE of any photograph other than
25 the PHOTOGRAPH" at issue.  Request No. 8 sought all documents concerning "any revenues,
26 money, or other compensation received by [Mock] in return for any use of a photograph" other than

7

1  the one at issue in this case. (Order at 3.) Mock objected to both requests on the ground that

2  compliance, as a non-party, will subject him to an undue burden. Id.

3      Judge Seeborg first found that there was "arguable relevance" to the documents sought

> . . . because evidence of past licensing of photographs taken by Mock could be some indicator of the market value of the disputed photograph at the time of the alleged infringement. That value could bear both on the question of reasonable royalty and the Center's affirmative defense of fair use – specifically, the fourth fair use factor, which addresses whether the Center's use of the photograph affected the potential market and value of the disputed photograph.

8  (Order at 7.) Judge Seeborg then found that the probative value in practical terms was limited,

9  because Mock could only recall assigning or licensing one other photograph, and "even if additional

10 assignments or licenses exists, the Center has made no showing that such disconnected photographs

11 would have other than the most tenuous relationship to the issues presented in this action." (Order at

12 8.) In light of the minimal probative value, Judge Seeborg found that responding to the subpoena

13 request would impose a disproportionate burden on Mock; Mock estimated that the time required for

14 him personally to review 2,500 unique customer files to ensure compliance with the subpoena would

15 be at least 40 hours at a cost of $11,400. Id.

16     Defendant contends that Judge Seeborg's Order is contrary to law because the discovery it

17 seeks is germane to the issue of Plaintiff's damages and Defendant's fair use defense. Specifically,

18 Defendant contends that Plaintiff's entitlement to a royalty (and the amount of the royalty) is

19 determined by the amount that a willing buyer would reasonably have been required to pay a willing

20 seller for the owner's work. (Objections at 19.) Moreover, Defendant contends that a determination

21 of market value is relevant to fair use, because the fair use defense looks to the effect of the

22 Defendant's use on the potential market for or value of the copyrighted work. (Objections at 20.)

23     The Ninth Circuit has held that necessary restrictions must be imposed on non-party

24 discovery to "protect third parties from harassment, inconvenience, or disclosure of confidential

25 documents." Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir. 1980).

The Court declines to disturb Judge Seeborg's finding that reviewing thousands of non-electronic files in order to respond fully to the non-party subpoena would impose a disproportionate burden on Mock.  Moreover, the relevance of Mock's licensing records depends, in part, on the damages that Plaintiff claims (i.e. whether Plaintiff ultimately claims more than nominal damages).  Defendant contends, and Judge Seeborg found, that evidence of past licensing of photographs could be at least minimally probative of the market value of the disputed photograph at the time of the alleged infringement—and could affect Defendant's affirmative defense of fair use.  In his Complaint, Plaintiff claims that he has "suffered damages in an amount not yet ascertained . . ." (Complaint for Copyright Infringement ¶ 23, Docket Item No. 1.)  Thus, at this time, it is not yet clear whether the sought-after discovery will be relevant.  However, once Plaintiff has determined the amount of damages he intends to claim at trial, the Court will entertain a renewed motion for discovery, narrowly tailored in scope, into Mock's assignment or licensing records.

### IV.  CONCLUSION

The Court OVERRULES Defendant's Objections to Magistrate Judge Seeborg's Order.

Dated:  June 20, 2007

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Albert L. Sieber asieber@fenwick.com
Mary Elizabeth Milionis MMilionis@Fenwick.com
Mitchell Harris Zimmerman mzimmerman@fenwick.com
Patrick Eugene Premo ppremo@fenwick.com
Rachel E. Matteo-Boehm rachel.matteo-boehm@hro.com
Roger Rex Myers roger.myers@hro.com

**Dated: June 20, 2007**                    **Richard W. Wieking, Clerk**

                                       **By:  /s/ JW Chambers**
                                             **Elizabeth Garcia**
                                             **Courtroom Deputy**

**United States District Court**
For the Northern District of California